UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KIM R. JONES,                )
                             )
             Plaintiff,      )    Case No. 1:08-cv-562
                             )
v.                           )    Honorable Paul L. Maloney
                             )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )    **REPORT AND RECOMMENDATION**
             Defendant.      )
_____)

This is a social security action brought under 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. On December 3, 2004, plaintiff filed her application for SSI benefits, claiming a January 1, 2000 onset of disability.[1] (A.R. 90-92). Plaintiff's claim was denied on initial review. (A.R. 25, 53-56). On September 6, 2007, plaintiff received a hearing before an administrative law judge (ALJ) at which he was represented by counsel. (A.R. 377-420). On October 12, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-22).

---

[1] The December 2004 application was plaintiff's third unsuccessful application for SSI benefits. She filed her first application on December 4, 2000, alleging a November 15, 2000 onset of disability. (A.R. 111-13). On May 17, 2001, the application was denied on initial review and plaintiff did not seek further review. (A.R. 30, 61-64). Plaintiff filed her second application on January 31, 2003, and again alleged a November 15, 2000 onset of disability. (A.R. 100-03). This claim was denied on April 23, 2003, and plaintiff did not seek further administrative review. (A.R. 27, 57-60).

The earliest date a claimant for SSI benefits is eligible for benefits is the month after the application for benefits is filed. 20 C.F.R. § 416.501. Thus, January 2005 is the earliest date plaintiff could possibly be entitled to SSI benefits on her December 2004 application.

On May 9, 2008, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On June 13, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. The two issues raised by plaintiff are as follows:

> I. The ALJ committed reversible error by not finding that Plaintiff met Listing 12.05C.
>
> II. The ALJ's behavior during the hearing and in the writing of his Opinion was not appropriate and resulted in unfair prejudice to the Plaintiff; should a remand be ordered, [it] should result in this case being assigned to a new ALJ.

(Plf. Brief at 8, docket # 15). Upon review, I find that plaintiff's arguments do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters*

v. *Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (A.R. 16). He found that plaintiff had the following severe impairments: status-post 1998 ankle surgery, dysthymia, and borderline intellectual functioning. (A.R. 16). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or

equaled the requirements of the listing of impairments. (A.R. 18-19). She did not meet the requirements of Listing 12.05 because the record "did not establish significantly subaverage general intellectual functioning with deficits in adaptive functioning manifested during the developmental period prior to age 22, as required in order to meet 12.05C." (A.R. 18). The ALJ found that plaintiff had a moderate restriction in her activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation:

> **In activities of daily living, the claimant has moderate restriction.** The claimant is a single mother whose children (one adult) and grandchild live with her. She takes care of her personal needs without assistance. She reported that she relies on her oldest daughter to help with the household chores, preparing meals except for microwave meals which she can prepare herself, doing laundry, taking her to the grocery store and paying bills. She reported that she has never possessed a driver's license. She reported spending time watching television, playing video games, working puzzles, and reading (Exhibit 6F) [A.R. 276-81]. When seeing the consultative examiner in March of 2005, she reported that she tried to do household chores, would prepare breakfast, would get her young children off to school, and went grocery shopping with her aunt or daughter (Exhibit 11F) [A.R. 317-21]. She testified that she has a problem standing and walking on uneven terrain or snow; that she uses a cane at home but she did not use one at the hearing; and that she cannot cook because she cannot stand that long and cannot clean house because it is hard to bend and stoop due to back pain. She reported that she uses Tylenol and Motrin for pain (Exhibit 22E) and testified that she took Wellbutrin for a while but did not know the name of her current medication.
>
> **In social functioning, the claimant has moderate difficulties.** She reported having a dysfunctional childhood with moving back and forth between her mother and grandmother and reported being sexually molested as a child. She reported she gets along well with her children and her siblings and has no friends (Exhibit 6F) [A.R. 277]. She reported not getting along well with teachers, police, bosses and landlords (Exhibit 12E) [A.R. 197]. She testified that she gets along well with her children and the rest of the family.
>
> **With regard to concentration, persistence or pace, the claimant has moderate difficulties**. The record establishes that she had poor grades in school but the record does not show any special education classes (Exhibit 24E) [A.R. 246-61]. The claimant testified that she was placed in an alternative school for 10th and 11th grades, and the record shows poor grades and excessive absenteeism. She reported that she skipped classes, went walking around, and went to stores instead of attending school. She testified that she had worked at

jobs in the past. The claimant was found to have mild mental retardation based on the consultative report in 2003 (Exhibit 6F) [A.R. 282-83]. The report of consultative examination in March 2005 shows borderline or adult mental retardation and possible learning disability (Exhibit 11F) [A.R. 317-21].

**As for episodes of decompensation, the claimant has experienced no documented episodes of decompensation of extended duration.** The claimant has not sought mental health treatment or been psychiatrically hospitalized and is not currently undergoing any counseling. The record shows that she was initially prescribed Wellbutrin for smoking cessation and depression and was later switched to Lexapro by treating sources at the Wege Center (Exhibit 15F) [A.R. 349].

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked limitation and "repeated" episodes of decompensation, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

(A.R. 19).

The ALJ found that plaintiff retained the following residual functional capacity (RFC):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: inability to walk on uneven terrain and inability to maintain the attention and concentration necessary to perform detailed or complex tasks.

(A.R. 20).

The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

Although the claimant testified that she quit drinking 6 or 7 years ago [A.R. 385], the medical evidence shows that she was intoxicated when seen at the emergency room in September 2004 after falling down 8 to 10 steps (Exhibit 10F)[A.R. 314]. In March 2005, she reported having inpatient care at Turning Point, a local alcohol treatment center, and at another center which she could not remember the name. She also admitted drinking "a pint" on a holiday to the point of intoxication (Exhibit 11F)[A.R. 317]. In March of 2005, the claimant reported drinking 1 1/2 pints a week (Exhibit 12F)[A.R. 322]. An emergency room record in January 2007 shows the claimant reported drinking 2 pints of liquor prior to being

-5-

involved in an altercation with another individual and being struck in the forehead with a folding chair (Exhibit 15F)[A.R. 369].[2]

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

As for the opinion evidence, little weight is given to the physical assessment of the medical examiner (not a medical physician) who found plaintiff limited to light physical exertion (Exhibit 5F)[A.R. 269]. More weight is given to the medical assessment by Dr. VanHouten who found the claimant could do simple, unskilled labor (Exhibit 8F)[A.R. 299-303]. None of the claimant's treating sources has placed any limitations on her activities. Any limitations in her daily activities are self-imposed and not supported by the evidence of record.

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 416.929(c)(3) and SSRs 96-4p and 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted and that the residual functional capacity finding in this case is justified.

(A.R. 20).

Plaintiff had no past relevant work. (A.R. 20). "Although the claimant testified that she worked as a janitor, housekeeper, daycare worker and a lunch room attendant, her earnings [were] not consistent with substantial gainful activity." (A.R. 21). Plaintiff was thirty-one years old as of her alleged onset of disability and thirty-nine years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim, plaintiff was classified as younger individual. (A.R. 21).

---

[2]The Social Security Act, as amended by PUB. L. No. 104-121, 110 STAT. 847, 852-55 (1996) precludes awards of SSI benefits based upon alcoholism or drug addiction. *See* 42 U.S.C. § 423(d)(2)(C). It was plaintiff's burden to demonstrate that her alcohol abuse was not material to a finding of disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001); *Brown v. Apfel*, 198 F.3d 492, 498 (5th Cir. 1999). Because the ALJ found that plaintiff was not disabled, it was not necessary for him to reach the issue of whether plaintiff's alcohol abuse was material to a finding of disability. *See* 20 C.F.R. § 416.935(a).

Plaintiff has a limited education and is able to communicate in English. (A.R. 21). The transferability of job skills was not at issue because plaintiff lacked past relevant work. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 1.4 million jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 414-15). The ALJ held that this constituted a significant number of jobs. Using Rule 204.00 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-22).

**1.**

Plaintiff argues that the ALJ's finding that she did not meet the requirements of listing 12.05(C) is not supported by substantial evidence. Upon review, I find that there is more than substantial evidence supporting the ALJ's finding that plaintiff did not meet or equal the requirements of this listed impairment.

It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

Listing 12.05(C) contains the following requirements:

> 12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

C. A valid verbal, performance, or full scale IQ of 60 to through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R. Pt. 220, App. 1. Listing 12.05(C) must be read as a whole and plaintiff had the burden of demonstrating that she met all parts of the listing. "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* listing 12.00(A); *see also Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009). The Sixth Circuit summarized the claimant's burden under listing 12.05(C) as follows:

> In essence, then, a claimant must make three showings to satisfy Listing 12.05(C): (1) [s]he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) [s]he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) [s]he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id. See also Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

*West v. Commissioner*, 240 F. App'x 692, 697-98 (6th Cir. 2007).

The ALJ found that plaintiff did not meet or equal the requirements of listing 12.05(C) because, among other things, she did not have subaverage general intellectual functioning with deficits in adaptive behavior. Plaintiff argues that the ALJ should have found that her lack of academic success at school satisfied this requirement. (Plf. Brief at 9). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Commissioner*, 240 F. App'x 692, 698 (6th Cir. 2007). The ALJ questioned plaintiff about the high schools she had attended. Plaintiff testified that in ninth grade she was enrolled

Union High School and that in tenth and eleventh grades she was at Walbridge Academy. (A.R. 389-90). Her September 1985 credit evaluation from Grand Rapids Public Schools show that plaintiff had earned credits placing her at a 10th grade level and that she was carrying a 2.46 grade point average. (A.R. 252). She testified that she attended regular high school classes rather than special education classes. (A.R. 389-90). The ALJ questioned plaintiff regarding her poor school attendance. (*See* A.R. 261). She testified that when she skipped school she would go "to stores and stuff like that." (A.R. 392). Thus, plaintiff's high school experience does not support a finding in her favor. Furthermore, her incidents of daily living do not show major defects in adaptive behavior. She testified at the September 6, 2007 hearing that all three of her children were living with her. (A.R. 381). Her ability to raise her children was a relevant consideration. *See e.g.*, *Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007). Plaintiff stated that she began abusing drugs and alcohol when she was seventeen. (A.R. 277). There is more than substantial evidence supporting the ALJ's decision finding that plaintiff did not have deficits in adaptive functioning and did not meet or equal the requirements of listing 12.05(C).

**2.**

Plaintiff argues that the ALJ's "deportment and conduct during the hearing and in the writing of his Opinion were inappropriate." (Plf. Brief at 10). The argument is set forth verbatim and in its entirety below:

> Plaintiff must regrettably also say that the ALJ's deportment and conduct during the hearing and in the writing of his Opinion were inappropriate. As can be seen from the Statement of Facts, he made unfounded statements and inappropriate responses when Plaintiff's attorney tried to clarify the evidence. Furthermore, in his Opinion demonstrated a clear avoidance of duty to give Plaintiff a full and fair hearing, as his avoidance of the most relevant evidence is unmistakable. In *Fulwood v Heckler*, 594 F. Supp 540 (D.C.D.C. 1984),

> that District Court reversed the decision in that case due to improprieties committed by the ALJ. While the facts of *Fulwood* are not similar, the reasoning of the ALJ in his decision clearly indicates that a remand, if it occurs, should be made to a new ALJ. There is simply no excuse for tolerating such a fundamentally flawed Opinion as the one in the case at bar.

(Plf. Brief at 10, docket # 15). I find that plaintiff's argument is meritless.

"Appropriateness" is not the standard of judicial review applicable to a final decision of the Commissioner denying an application for SSI benefits. While the ALJ's written opinion is subject to judicial review, his deportment and conduct "in the writing of his [o]pinion" are irrelevant. Indulgently construed, plaintiff is claiming a violation of her rights under the Due Process Clause because the ALJ was biased against her and her attorney, depriving her of a fundamentally fair hearing. *See Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Wells v. Apfel*, No. 99-5548, 2000 WL 1562845, at * 5 (6th Cir. Oct. 12, 2000). The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present."[3] *Collier v. Commissioner*, 108 F. App'x 358, 364-65 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982) and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Collier*, 108 F. App'x at 364. Here, a review of the hearing transcript and the ALJ's opinion make clear that the ALJ's actions fall far short of the extreme conduct necessary to sustain a claim of bias. *See Keith v. Barnhart*, 473 F.3d 782, 790 (7th

---

[3]Plaintiff did not allege that the ALJ was biased until after the ALJ denied her claim for benefits. She never utilized the procedure outlined in the regulations for disqualifying an ALJ whom plaintiff believes to be biased. 20 C.F.R. § 416.1440.

Cir. 2007). The transcript and the ALJ's opinion do not reveal any bias against plaintiff or her attorney.

Plaintiff argues that the ALJ "made unfounded statements and inappropriate responses when Plaintiff's attorney tried to clarify the evidence." (Plf. Brief at 10). Her brief then makes a general allusion to her seven-page "statement of facts" rather than directing the court to any purportedly offending portion of the hearing transcript or the ALJ's opinion. (*Id.*). This approach is not helpful. It appears that plaintiff was referring to the excerpt from her statement of facts quoted below:

> The ALJ questioned Plaintiff about whether any doctors had restricted her, and she said that they had not (408-409). When Plaintiff's attorney told the ALJ that he believed that Plaintiff met Listing 12.05C, he said that she did not (410-412).
> Next, the vocational expert Richard Riedle was asked to assume that Plaintiff could not walk on uneven terrain or perform detailed or complex tasks; under that scenario, he testified that there would still be a large number of unskilled jobs for her (414-415). If Plaintiff could not perform even simple tasks on a sustained basis, the hypothetical would have eliminated all jobs (415). At that point, the ALJ claimed that Plaintiff had a work history, and when Plaintiff's attorney stated otherwise, the ALJ claimed that she had performed work "in her developmental period" (416-417). The ALJ then suggested that the attorney was discrediting his client and then asked the client to reiterate that she had told the truth (417-418). Plaintiff's attorney pointed out that the earnings showed that Plaintiff had not have [sic] worked long full time for any significant length of time, at which point the ALJ accused him of trying to discredit his client's testimony (418). The ALJ later said: "Mr. Rink, we're not testing significant gainful activity or PRW [Past Relevant Work], we are testing her literacy and her ability to adapt within the limitations that she possesses, that's where we are." (419-420). The hearing then ended.

(Plf. Brief at 5-6). The entire transcript, including the pages cited in the above-quoted paragraph, reveals that the ALJ was not biased, and that he was very patient with plaintiff and her attorney. The ALJ had questioned plaintiff regarding the jobs she had performed when she was younger. She responded that she had performed full-time work as a daycare provider and that she had worked in a cafeteria performing janitorial work. She testified that she had been in her late teens, well within

-11-

the developmental period, when she had worked full time for three or four years as a housekeeper. Plaintiff testified that she stopped working after the birth of her first child. (A.R. 395-99). After the ALJ had concluded his questioning, he invited plaintiff's attorney to question his client regarding anything the ALJ may have overlooked. (A.R. 410). Counsel responded that he thought the ALJ had been "thorough." (A.R. 410). Plaintiff's attorney then launched into his argument that plaintiff met the requirements of listing 12.05(C). (A.R. 410). The ALJ related that he was "not going to argue the matter" with plaintiff's attorney, but he expressed justifiable skepticism that the medical evidence in this record would support any listing-level impairment. (A.R. 410-11). The ALJ advised plaintiff that he would take plaintiff's theory under advisement. (A.R. 413).

Even if the ALJ had been discourteous or demeaning, that would not provide a basis for overturning the ALJ's decision. *See Collier*, 108 F. App'x at 364 ("While some of the comments made by the ALJ were both unnecessary and inappropriate, the court does not discern any basis on which to conclude that he was biased in a manner which affected the outcome of the hearing."); *see also Moss v. Commissioner*, 39 F. App'x 989, 991 (6th Cir. 2002); *Wells v. Apfel*, 2000 WL 1562845, at *5-6. Here, the ALJ was not discourteous, demeaning, or otherwise inappropriate. The record does not support plaintiff's argument that she was deprived of a fundamentally fair hearing because the ALJ was biased against her or her attorney.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: September 8, 2009          /s/ Joseph G. Scoville
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).