UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| KIM R. JONES, | Case No. 1:08-cv-562 |
|---|---|
| Plaintiff, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Joseph G. Scoville |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION and ORDER**

Overruling the Petitioner's Objections and Adopting the R&R;
Affirming the Commissioner's Denial of Disability Benefits
Entering Judgment in Favor of the Defendant;
Terminating and Closing the Case

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIvR 72.2(b), this matter was automatically referred to the Honorable Joseph G. Scoville, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Tuesday, September 8, 2009. Plaintiff filed timely objections on Monday, September 21, 2009, and the Commissioner filed a timely response to the objections on Monday, September 28, 2009. The court also finds that plaintiff's objections are sufficiently specific to trigger *de novo* review of the portions of the R&R to which she has objected.[1]

---

[1] "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R&R, substantial evidence in the record supported the ALJ's determination that Jones's severe impairments – dysthymia, status following 1998 ankle surgery, and borderline intellectual functioning – did not render her disabled between her alleged disability onset date (January 1, 2000) and her date last insured.

Preliminarily, Jones begins her objection by stating, "Plaintiff incorporates her previous briefs in this case by reference." P's Objection at 1. That is inappropriate. To the extent that a party purports to incorporate by reference arguments, evidence, or authorities presented in prior filings, he has lodged an unavailing general objection. *See Smith v. Konteh*, 2009 WL 799095, *3 (W.D. Mich. Mar. 23, 2009) (Maloney, C.J.) (petitioner failed to satisfy the requirement of a specific objection by stating, "Petitioner respectfully objects to all the magistrate['s] proposed findings on the grounds previously stated in petitioner's original . . . and . . . amended habeas corpus petition . . . .") (citing *Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) (Cleland, J.) ("An objecting party may not simply 'incorporate by reference' earlier pleadings . . . .") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008)), *recon. denied*, 2009 WL 1811634 (E.D. Mich. Apr. 27, 2009). *See also Andreas v. SSA*, 2009 WL 427377, *2 (W.D. Mich. Feb. 18, 2009) ("It is not the court's job to scour earlier filings for reasoning or citations that [plaintiff] failed to include in [his] objections, and the court will not do so.") (citations omitted); *Foster v. Ameriquest Mortgage*, 2009 WL 646420, *2 (E.D. Mich. Mar. 11, 2009) (adopting R&R without review, noting, "Plaintiff does not list specific objections . . . . Instead, Plaintiff merely attempts to reassert his claims for relief. * * * 'Overly

---

of the Magistrate's report that the district court must specifically consider'")).

general objections do not satisfy the objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006));

>Jones then summarizes the R&R as she reads it:
>
>>The basic issue in this case is whether the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05C was supported by substantial evidence. The Magistrate supported the ALJ's finding that Plaintiff did not meet the Listings because she did not demonstrate subaverage general intellectual functioning with deficits in adaptive behavior before age 22 [citing R&R at 8]. The ALJ justified that finding by saying plaintiff had achieved a 2.46 grade point average, that she had not attended special education classes and that she had left school because she was truant as opposed to not being able to perform her schoolwork [citing R&R at 9]. The Magistrate supported those findings, and he also thought that the fact that Plaintiff's three children were living with her and that she was able to raise them was a proper consideration [citing R&R at 9]. The Magistrate also discarded [sic] Plaintiff's assertion that the ALJ's conduct during the hearing was improper.

Jones does not object to Magistrate Judge Scoville's rejection of her argument regarding the ALJ's alleged improper conduct during the hearing.

On the Listing 12.05C issue, Jones first makes an undeveloped argument that a recent Social Security disability case decided by this court somehow compels reversal of the Commissioner's decision in her case:

>There is no question Plaintiff's IQ met the standard to meet Listing 12.05C, but much as the ALJ did, the Magistrate avoided that fact. What is most galling about this case is that the same ALJ was reversed by Magistrate Carmody in her Report and Recommendation dated September 9, 2008 (*Curtis Edwards v. Commissioner*, Western District of Michigan Case No. 1:07-cv-848), which was attached to Plaintiff's initial brief for the convenience of the Court. The cases are virtually identical. The same ALJ failed to properly consider the same Listing in virtually the same way as he did in the *Edwards* case. Nevertheless, the result is different. The obvious question is why?

Jones's invocation of *Curtis Edwards* suffers from several basic deficiencies. First, Jones provides no discussion whatsoever of the facts and medical evidence in the record in *Curtis Edwards*, thereby providing no basis for her argument that this case is materially identical to Curtis Edwards's case.

Second, Jones neglects to mention that the government did not object to the R&R in the case, and, accordingly, this court, following customary practice, adopted the R&R there without review or discussion. *See Curtis Edwards v. SSA*, 2008 WL 4425587, *1 (W.D. Mich. Sept. 26, 2008) (Maloney, C.J.) ("To the extent *de novo* review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties.") (quoting *Peretz v. US*, 501 U.S. 923, 939 (1991)) (footnote 1 omitted); *Edwards*, 2008 WL 4425587 at *2 ("[T]he failure to file timely specific objections obviates not only *de novo* district-judge review of the R&R, but *all* district-judge review.") (emphasis added) (citing *Thomas v. Arn*, 470 U.S. 140, 141-42 and 149-50 (1985)). For these reasons, Jones's reliance on *Edwards* is unavailing.

> The remainder of Jones's objection reads as follows, in its entirety,
>
> In the case at bar, the ALJ held that despite Plaintiff's I.Q. score, there was not enough evidence that Plaintiff had a mental disability before age 22. That conclusion is totally contrary to the typical understanding about mental ability (aka I.Q.), which is that it is established early in life and does not change significantly save for significant head trauma or other events.
>
> Moreover, a significant line of cases from the Eleventh Circuit, which were cited in plaintiff's Reply Brief, demonstrates that the Social Security Administration is simply wrong in its insistence on additional evidence to support the onset of IQ deficits before age 22. In *Hodges v. Barnhart*, 276 F[.]3d 1265 (11th Cir. 2001), the Eleventh Circuit held that there was a rebuttable presumption that the claimant had manifested deficits in adaptive functioning before the age of 22 if a claimant has established a valid IQ score between 60 and 70. That Court found that "IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life." *Hodges*, 276 F[.]3d at 1268. And when the *Hodges* case is reviewed, this Court will note that it has been cited through[out] the federal system with approval, albeit not by any courts in the Sixth Circuit. That provides a great opportunity for this Court to place the Sixth Circuit in what seems to be the uncontradicted majority of federal courts by adopting the common sense principle set for[th] in *Hodges*.
>
> In fact, in the more recent case of *Grant v. Astrue*, No. 70-12206 (11th Cir. November 13, 2007), 2000 U.S. 8 pp Lexis [sic] 165540, the Eleventh Circuit further held that the ALJ in that particular case had applied an improper standard by requiring the claimant to demonstrate such pre-age 22 deficits in functioning. As in the *Grant*

> case, there was substantial evidence in this case that Plaintiff had experienced constant deficits throughout her life, and the ALJ in *Grant* failed to addressed the fact that if a psychologist makes a diagnosis of mental retardation, the psychologist has already considered a person's adaptive functioning.
>
> Frankly, the cases from the Eleventh Circuit make perfect sense. There is no real need for the school records and that sort of evidence, despite the Defendant's contentions to the contrary. However, in this case, the school records reflected that plaintiff may have finished the ninth grade, that she attended alternative schools, and that her grades were generally poor – those facts certainly would support the kind of I.Q. scores which were found in this case. Asa result, Plaintiff clearly has demonstrated that she met the Listing [12.05C] and that she should have been awarded benefits. As a result, she would respectfully request that this Honorable court accept her Objections to the Report and Recommendation of the Magistrate and that [i]t issue a [d]ecision in her favor.

P's Objection at 1-3 (some paragraphs added).

There is nothing improper about Jones trying to persuade this court to follow Eleventh Circuit reasoning where it does not conflict with our Circuit's own precedent. But this court is unconvinced and declines to adopt the Eleventh Circuit's standard as urged by Jones, to the extent that it differs from, or goes beyond, the decisions of our Court of Appeals. Moreover, as discussed below, even if this court adopted the Eleventh Circuit's rebuttable presumption, it would not alter the outcome in the instant case.

The Supreme Court has emphasized that a claimant's condition does not equate with a listed impairment unless he shows that his impairment meets *all* of the medical criteria in the Listing, *see Lawson v. SSA*, 192 F. App'x 521, 529 (6th Cir. 2006) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)), and "'[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify'", *Hicks v. SSA*, 105 F. App'x 757, 761 (6th Cir. 2004) (quoting *Sullivan*, 493 U.S. at 530). Listing 12.05 allows a claimant to establish disabling mental retardation with proof that she satisfies the diagnostic description in its opening paragraph *and* one of four independent sets of

criteria. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Listing 12.05's opening paragraph requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports [a finding of] onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05. Subsection (C) additionally requires proof of "[a] valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.05(C) (emphasis added). Both the ALJ and Magistrate Judge Scoville correctly acknowledged that Jones had presented verbal IQ and full-scale IQ scores of 67, which satisfied one of the two criteria in § 12.05(C).

For one thing, the only IQ scores presented came from a test performed in 2003, when Jones was thirty-four years old – fully *twelve years* after the "developmental period" ended at age 22. On one hand, there is no absolute, express statutory or regulatory *requirement* that a plaintiff claiming disabling mental retardation produce scores from pre-age-22 IQ tests. *See West v. SSA*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (C.J. Boggs, Batchelder, Griffin). However, when presented with a form on which a psychologist has checked a box or made brief notations consistent with mental retardation, but not actually diagnosing mental retardation, our Circuit has cautioned that

> *we generally require* a claimant to meet this requirement through more definite means, such as providing the Commissioner with *scores from a test taken prior to the age of 22 or conclusions from an evaluation performed before Plaintiff had turned 22*, rather than through perfunctory box-checking.

*Daniels v. SSA*, 70 F. App'x 868, 873 (6th Cir. 2003) (Batchelder, Clay, D.J. Schwarzer) (emphasis added).

Moreover, the great length of the time period separating the end of the developmental period

6

from the administration of the IQ test, tends to seriously undermine its probative value regarding Jones's condition over a decade earlier. *See* decisions affirming rejection of claim of disabling mental retardation, notwithstanding low IQ scores from tests administered long after age 22: *Carmack v. Barnhart*, 147 F. App'x 557, 560 (6th Cir. 2005) (C.J. Boggs, Batchelder, Gibbons) ("[T]he evidence does not support the onset of the 'significantly subaverage general intellectual functioning' before age 22. None of Carmack's testing 'was contemporaneous with her development period.' The first testing on Carmack occurred in 1998, decades after she turned 22.") (quoting *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)); *Foster*, 279 F.3d at 354-55 ("Foster has failed to show that her general intellectual functioning was 'significantly subaverage' prior to that age. None of her testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed . . . .")); *Kershaw v. HHS*, 1995 WL 19372, *1 (6th Cir. Jan. 18, 1995) ("Kershaw presented no evidence that she suffered from borderline intelligence of a disabling nature before she reached age 22, and therefore did not meet her burden of proof."); *Dishman v. Astrue*, 2009 WL 2823653, *13 (E.D. Tenn. Aug. 27, 2009) (Harry Mattice, D.J., adopting R&R of Susan Lee, M.J.) ("Plaintiff relies on the [full-scale] I.Q. score [of 64] obtained by Dr. O'Brien on the WAIS-III test he administered during his consultative psychological examination of Plaintiff on December 16, 2002 [at age 39], which was well after Plaintiff reached age 22. Plaintiff does not point to any testing, nor has he submitted any testing prior to age 22, which manifested any mental deficiency.") (footnote 5 omitted); *Watts v. Astrue*, 2009 WL 2515423, *3 (E.D. Ky. Aug. 4, 2009) (Karl Forester, J.) ("Foster failed to present evidence that her general intellectual functioning was 'significantly subaverage' before age 22. Her first [IQ] testing was at age 42.").

In any event, the denial of retardation-based disability benefits, however, was not based on their refusal to accord proper weight to these IQ scores. Rather, as Magistrate Judge Scoville noted, the ALJ reasonably found that Jones did not meet Listing 12.05(C) for a different reason: she did not satisfy the requirement of the Listing's introductory paragraph that she manifest "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before age 22.

Thus, even if this court adopted the Eleventh Circuit's rule that an IQ score under 70, when presented with evidence of another severe impairment, leads to a rebuttable presumption of mental-retardation disability, substantial evidence of record here permits the conclusion that the presumption is rebutted. The ALJ could reasonably find that the presumption of disability is rebutted by the evidence that during "the developmental period *prior* to age 22", Jones attended an alternative school for two years but was never assigned to special-education classes, as Jones herself gave conflicting and unclear testimony as to whether she attended such classes, *see* JA 276-277 and 389-391. *See Leslie v. SSA*, 2009 WL 3153034, *7 (S.D. Ohio Sept. 25, 2009) (Rice, J.) (affirming ALJ's rejection of mental-retardation disability claim, stating, "[E]ven assuming that Dr. Bond's . . . diagnosis of mild mental retardation is entitled to great weight, there is no evidence in the record of deficits in adaptive behavior initially manifested during the developmental period, that is, before age 22. In fact, *Plaintiff's school records indicate that Plaintiff attended regular classes until at least the tenth grade*.") (emphasis added); *contrast Yates v. Astrue*, 2009 WL 2611276, *10 (M.D. Tenn. Aug. 29, 2009) (reversing ALJ and awarding benefits based on disabling mental retardation, finding that record compelled conclusion that plaintiff met "the introductory listing requirement that mental deficits manifest before the age of 22" where his "school records illustrate[d] a history of

8

poor or failing grades", he failed the fifth grade twice, and "he graduated high school with a special education diploma").

Moreover, Jones achieved a GPA of 2.46, and she presents no expert opinion or case law for the counterintuitive notion that such a GPA bespeaks mental retardation, whether generally or in her particular circumstances. *Contrast McPeek v. HHS*, No. 93-5204, 19 F.3d 19, 1994 WL 56929, *2 (6th Cir. Feb. 24, 1994) (Martin and D.J. Hull, over dissent of Batchelder, J.) (reversing denial of mental-retardation disability claim where plaintiff presented age-32 "performance IQ" score of 69 *and* her "academic record, which is *replete with failing grades*, [wa]s consistent with significantly impaired intellectual performance before age twenty-two.") (emphasis added).

In addition to Jones's 2.46 GPA and the absence of definitive proof that she ever attended special-education classes, the ALJ was entitled to place weight on the fact that Jones left school in the wake of her excessive truancy. At the very least, that allowed reasonable people to differ as to whether Jones's failure to earn a high-school diploma was attributable to her lack of attendance and effort as opposed to her alleged mental retardation. *See Groves v. Astrue*, 2009 WL 2707367, *18 (M.D. Tenn. Aug. 27, 2009) (Nixon, Sr. D.J., adopting R&R of Juliet Griffin, M.J.) ("Even if the ALJ accepted the validity of the plaintiff's 200[0] IQ scores [full-scale 69, verbal 73, performance 70], the plaintiff would not meet the listing of 12.05C. The record does not establish that the plaintiff has been intellectually challenged for the duration of her life and thus she does not meet the introductory listing requirement that mental deficits have manifested before the age of 22. The plaintiff's school records indicate that she withdrew from school during her seventh grade year at the age of 16, and that she was absent from school for 86 days that year. The plaintiff was also absent from school for 83 days during fifth grade and for 48 days during sixth grade. *The plaintiff's*

*marginal grades could have been due to her significant number of absences.* There is also no indication that the plaintiff was placed in a special education curriculum.") (emphasis added) (record citations omitted).

Finally, the ALJ could also reasonably find that any presumption of disability raised by Jones's IQ score was rebutted by the evidence that Jones's reported daily activities and history after the age of 22 – caring for herself, caring for her three children, watching television, playing videogames, doing puzzles, maintaining satisfactory relationships with her family members, and working at several jobs in the past – were inconsistent with the more-severe "deficits in adaptive functioning" contemplated by the Listing's opening paragraph. *See generally Pearson v. SSA*, 2008 WL 2325617, *6 (W.D. Mich. May 19, 2008) (Carmody, M.J.) ("'a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence of in the record concerning the claimant's daily activities and behavior'") (quoting *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997)); *see, e.g., Bristol v. Astrue*, 2009 WL 3210928, *4 (E.D. Mich. Sept. 30, 2009) (Borman, J.) (overruling claimant's objections, adopting R&R, and affirming rejection of mental-retardation disability claim, notwithstanding fact that one of five psychological examiners diagnosed mild mental retardation, where, *inter alia*, "Plaintiff was able to cook, clean, do the laundry, vacuum, shop and pay bills").

The ALJ's conclusion in this regard was bolstered by Dr. Van Houten's determination that Jones was only mildly limited in daily-living and social-functioning activities and moderately limited in concentration, persistence or pace, and thus still mentally able to do simple unskilled labor, *see* AR 289, 295 and 301. That assessment was reinforced by Dr. Florante, who likewise determined that Jones was only mildly limited in daily-living and social-functioning activities and

moderately limited in maintaining concentration, persistence and pace, and opined that she retained the mental functional capacity to do simple, routine, repetitive tasks, *see* AR 327 and 339-41. A third evaluation, by Dr. Spahn, did not suggest, let alone compel, a different conclusion about the nature and degree of Jones's deficits in adaptive functioning; he assigned her a Global Assessment of Functioning ("GAF") score of 55, which suggested only moderate symptoms and limitations in functioning, *see* AR 320. *Cf. Cooper v. SSA*, 217 F. App'x 450, 452 (6th Cir. 2007) (p.c.) (Martin, Batchelder, McKeague) ("it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the diagnostic description in [the opening paragraph of] Listing 12.05. It is undisputed that *no psychologist has diagnosed Cooper with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning.* Moreover, Cooper performed a number of common activities inconsistent with mental retardation, including semiskilled work for a number of years, playing guitar, and riding a motorcycle. There is substantial evidence in the record that Cooper does not meet the diagnostic description.") (emphasis added); *Daniels v. SSA*, 70 F. App'x 868, 873 (6th Cir. 2003) (Batchelder, Clay, D.J. Schwarzer) ("Plaintiff has presented no medical findings showing 'significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to the age of 22; indeed, the three psychologists seem to agree that Plaintiff is of low intelligence but not mentally retarded.").

**ORDER**

Accordingly, the plaintiff's objections [document # 20] are **OVERRULED**.

The R&R [document # 19] is **ADOPTED**. The complaint is **DISMISSED**.

Judgment will be entered by a separate contemporaneous document, per FED. R. CIV. P. 58.

This case is **TERMINATED** and **CLOSED**.

This is a final order.

**IT IS SO ORDERED this** 26th **day of October 2009.**

                                          /s/ Paul L. Maloney
                                          Honorable Paul L. Maloney
                                          Chief United States District Judge